UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
ALIYAH BAKER,                                    :
                                                 :
                              Plaintiff,         :   **OPINION AND ORDER**
                                                 :   **GRANTING IN PART AND**
                                                 :   **DENYING IN PART**
                       v.                        :   **DEFENDANTS' MOTION FOR**
                                                 :   **SUMMARY JUDGMENT AND**
                                                 :   **DENYING PLAINTIFF'S**
THE CITY OF NEW YORK, *et al.*,                  :   **MOTION FOR LEAVE TO**
                                                 :   **AMEND**
                              Defendants.        :
                                                 :   19 Civ. 8141 (AKH)
---------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

   In August 2019, Plaintiff Aliyah Baker ("Plaintiff") brought this action under 42 U.S.C. § 1983 against five police officers and the City of New York (collectively, "Defendants"), alleging various constitutional and state law violations stemming from her arrest in June 2018. Defendants now move for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* ECF No. 41. Plaintiff opposes and seeks to amend her complaint for a second time under Rule 15 of the Federal Rules of Civil Procedure. *See* ECF Nos. 44, 45. For the reasons discussed below, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiff's motion for leave to amend is denied.

## BACKGROUND[1]

   Plaintiff Aliyah Baker and her husband, Darnell Dover, reside in an apartment on West 135th Street in Manhattan ("Apartment"). Pl. 56.1 (ECF No. 46-1), at ¶ 8. On the evening of June 1, 2018, while on duty as patrol officers, Defendants Joseph Licata and Shpresa Tulovic

---

[1] The following facts are taken principally from the parties' statements submitted pursuant to Local Civil Rule 56.1 and documents referenced therein. The facts taken as true are, unless otherwise specified, either uncontested or not contravened by admissible evidence. *See, e.g.*, *Yoselovsky v. Associated Press*, 917 F. Supp. 2d 262, 265 (S.D.N.Y. 2013); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

received a dispatch message informing them of a domestic incident in the Apartment. *Id.* at ¶ 9. Defendants Licata and Tulovic responded and, upon their arrival, found Mr. Dover in the hallway outside of the Apartment. *Id.* at ¶ 12. Mr. Dover told Defendants Licata and Tulovic that his key did not work, and he did not know why. *Id.* at ¶ 14. Plaintiff asserts that Mr. Dover could not enter the Apartment because he was intoxicated and lacked the dexterity to unlock the door. *Id.* at ¶¶ 57, 60. Defendants, on the other hand, claim that Plaintiff locked Mr. Diver out of the Apartment following an earlier quarrel. Def. 56.1 (ECF No. 41-3), at ¶¶ 13–14. At the scene, Defendants Licata and Tulovic prepared a complaint report ("Complaint Report") and domestic incident report ("Domestic Incident Report"), charging Plaintiff with illegal eviction in violation of Section 26-521(a)(3) of the New York City Administrative Code. Pl. 56.1, at ¶¶ 16, 19. The completed Complaint Report and Domestic Incident Report were referred to the 32nd Precinct for further handling. *Id.* at ¶ 20.

      Two evenings later, Defendants Licata and Tulovic, along with three other police officers from the 32nd Precinct, Defendants Brian Hinton, Milagros Torres, and James Tibbal, returned to the Apartment pursuant to an investigation card. *Id.* at ¶ 65. After the five officers arrived at the Apartment, they pushed aside Mr. Dover and proceeded to enter Plaintiff's bedroom. *Id.* at ¶¶ 65–66. Defendant Licata informed Plaintiff that she was under arrest for illegal eviction. *Id.* at ¶ 35. Before anyone touched her, Plaintiff told the officers that she had an injured shoulder and could not be handcuffed behind her back. *Id.* at 76. Nonetheless, Defendants Licata and Hinton removed Plaintiff from her bed, turned her around, put her against the window, and handcuffed her behind her back. *Id.* at ¶¶ 69–70. Plaintiff did not resist the arrest, *id.* at ¶ 71, and again complained about her pre-existing shoulder injury, *id.* at ¶ 77. When Defendant Licata grabbed Plaintiff's right arm to handcuff her, she said "ouch, you are hurting

my arm." *Id.* at ¶ 72. Plaintiff was walked out of the Apartment by Defendant Tulovic. *Id.* at 78. After Plaintiff reached the lobby downstairs, she told the officers that the handcuffs were too tight and her arm was hurting. *Id.* at 79. The officers did not loosen the handcuffs, and Defendant Licata kept pulling Plaintiff's arm up behind her back. *Id.* at 79.

Plaintiff spent the night in custody and was arraigned the following day. *Id.* at 80. She was released on her own recognizance and ordered to reappear in court on July 9, 2018. *Id.* On July 9, 2018, before Plaintiff arrived in the courtroom, the criminal complaint against Plaintiff was dismissed. *Id.* at 81.

This litigation ensued. Plaintiff filed a complaint ("Complaint") on August 30, 2019, and an amended complaint ("Amended Complaint") on October 17, 2019, alleging, among other things, claims of excessive force, false arrest, and malicious prosecution. *See* Compl. (ECF Nos. 1), Am. Compl. (ECF No. 14). On January 8, 2021, Defendants moved for partial summary judgment on, (i) Plaintiff's excessive force and failure to intervene claims against all Defendants, (ii) false arrest claim against Defendants Hinton, Torres, and Tibbal, (iii) federal malicious prosecution claim against all Defendants, (iv) state law malicious prosecution claim against all Defendants except for Defendant Licata, (v) assault and battery claims against all Defendants, and (vi) negligent hiring, retention, training, and supervision claim against Defendant City of New York ("City"). *See generally* Def. Br. (ECF No. 41). In her opposition, Plaintiff concedes dismissal of her federal and state law false arrest and malicious prosecution claims against Defendants Hinton, Torres, and Tibbal, as well as her state law negligent hiring, retention, training, and supervision claim against the City. *See* Opp'n. Br. (ECF No. 45). On January 12, 2021, four days after Defendants filed their summary judgment motion, Plaintiff also moved to amend her Amended Complaint primarily to add an additional defendant. *See* ECF No. 44.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of pointing out evidence in the record, "which it believes demonstrate[s] the absence of a genuine issue of material fact . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may support an assertion that there is no genuine dispute of any material fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the movant fulfills its preliminary burden, the onus shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In making this determination, a court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id* at 250.

# DISCUSSION

There are five issues of contention before the Court.[2] The parties dispute whether summary judgment is appropriate as to (i) Plaintiff's excessive force and failure to intervene claims against all Defendants, (ii) state law assault and battery claims against all Defendants, (iii) federal malicious prosecution claim against Defendants Licata and Tulovic, and (iv) state law malicious prosecution claim against Defendant Tulovic. The parties also dispute whether Plaintiff should be granted leave to further amend her complaint at this juncture. The Court discusses these five issues in turn.

## I. Excessive Force and Failure to Intervene

Plaintiff asserts that Defendants Licata, Hinton, and Tulovic violated her constitutional rights by using excessive force in "grabbing, pinning, pulling, and handcuffing" her during the arrest.[3] Am. Compl. ¶ 48. Plaintiff also asserts that Defendants Torres and Tibbal violated her constitutional rights by failing to intervene in other Defendants' use of excessive force. *See id.* at ¶ 49. As a threshold matter, Defendants argue that Plaintiff "cannot rely upon another witness where it contradicts her own version of events" to survive summary judgment. Reply Br. (ECF No. 47), at 6 (citing *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc)). Defendants' approach, however, is contrary to how a court should appraise evidence proffered by a non-movant on summary judgment. The Supreme Court has repeatedly instructed that, on summary judgment, a court must view all evidence in the light most favorable to the

---

[2] As discussed *supra*, Plaintiff concedes that her false arrest and malicious prosecution claims against Defendants Hinton, Torres, and Tibbal and her state law negligent hiring, retention, training, and supervision claim against the City should be dismissed. *See generally* Opp'n. Br.

[3] Defendants argue in their opening brief that Defendant Licata was the only officer that "touched" Plaintiff during the arrest. *See* Def. Br., at 12. This assertion contradicts Defendants' own testimony. *See* Pl. 56.1, at ¶ 39 (quoting Ex. C (Licata Dep.) at 141:19-20; 142:11-16; 144:22-25; Ex. D (Tulovic Dep.) at 123:7-13; Ex. E (Hinton Dep.) at 73:9-11.).

5

non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 255; *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This rule suggests that a court must consider "any testimony—whether from the plaintiff, the defendant, or a non-party—that forms the version of events most favorable to the non-moving party." *Snead v. City of New York*, 463 F. Supp. 3d 386, 398 (S.D.N.Y. 2020). Defendants' approach instead urges the Court to "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. The Court finds no support for this approach in binding precedent and declines to deviate from the Supreme Court's well-established rule.

### a.  Excessive Force

Viewing the evidence "in the light most favorable" to Plaintiff and drawing "all reasonable inferences in its favor," *Allen*, 64 F.3d at 79, the Court finds that Plaintiff's excessive force claim cannot be resolved as a matter of law at this juncture. "The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A police officer's use of force is "excessive" in violation of the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances known to the officer. *Lennon v. Miller*, 66 F.3d 416, 425–26 (2d Cir. 1995). To determine whether the amount of force applied to a plaintiff was unreasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

On an excessive force claim involving handcuffing, "a plaintiff asserting a claim for excessive force need not always establish that [the plaintiff] alerted an officer to the fact that [the] handcuffs were too tight or causing pain," and the operative inquiry is "whether an officer reasonably should have known during handcuffing that [the officer's] use of force was excessive." *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). A plaintiff satisfies this threshold if either "the unreasonableness of the force was apparent" or the plaintiff signaled his distress "verbally or otherwise, such that a reasonable officer would have been aware of [the plaintiff's] pain." *Id*. "[A] plaintiff's testimony about the injuries and subsequent treatment alone is sufficient to support an excessive force claim on a motion for summary judgment" with respect to an excessive force claim regarding handcuffing. *Fernandez v. City of New York*, 457 F. Supp. 3d 364, 389 (S.D.N.Y. 2020) (citation omitted) (denying motion for summary judgment on excessive force claim concerning handcuffing).

As to Plaintiff's excessive force claim against Defendants Licata, Hinton, and Tulovic, each of the *Graham* factors weighs in Plaintiff's favor. The crime at issue was "a relatively minor one." *Cugini*, 941 F.3d at 613. Plaintiff was charged with the misdemeanor offense of unlawful eviction. *See* Def. 56.1, at ¶ 19. There is no indication that Plaintiff "posed a safety threat, immediate or otherwise," to Defendants or anyone. *Cugini*, 941 F.3d at 613. Neither did Plaintiff try to "flee or resist" Defendants' attempt to handcuff her. *Id* at 614; *see also* Pl. 56.1, at ¶ 71. Plaintiff also verbally signaled her distress at least three times during the arrest. Before any Defendant attempted to handcuff her, Plaintiff told them that she had an injured shoulder. *See* Pl. 56.1 at ¶ 76. While she was being handcuffed, Plaintiff again complained about her pre-existing shoulder injury. *See id.* at ¶ 77. After she was handcuffed and taken out of her apartment, Plaintiff complained that the handcuffs were too tight. *See id.* at

¶ 79. Under these circumstances, a reasonable jury could find that the severity of Defendants Licata, Hinton, and Tulovic's intrusion—manhandling Plaintiff, pulling her arms up behind her back, and refusing to loosen her handcuffs, in spite of her repeated verbal complaints—was unjustified. *See Cugini*, 941 F.3d at 614.

Defendants argue that summary judgment on Plaintiff's excessive force claim is also appropriate because "[she] has no evidence [that] she suffered any injury." Reply Br., at 8. The Court disagrees. This is not a case in which the plaintiff alleges only "temporary discomfort," *Fernandez*, 457 F. Supp. 3d at 389, or fails to "seek medical treatment" or even "treat [her] injuries [herself], *Kayo v. Mertz*, —— F. Supp. 3d ——, ——, 2021 WL 1226869, at *15 (S.D.N.Y. Mar. 31, 2021). Rather, Plaintiff alleges that Defendants' conduct exacerbated her pre-existing injury, that she felt persisting pain and mobility loss to her shoulder and arm months after the arrest, and that she has since actively sought medical treatment and therapy for her pain and motion issues. *See* Pl. 56.1, at ¶¶ 82–91; *see also Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012) ("[P]laintiff's testimony about the injuries and subsequent treatment *alone* is sufficient to support an excessive force claim on a motion for summary judgment." (emphasis added)). She also submitted medical and therapy records in support of her allegations of injury. *See id.*, Ex. 1–8. While Defendants dispute the causation and degree of Plaintiff's injury, *see* Reply Br., at 9–11, such disputes constitute issues of fact more appropriate for a jury. The Court therefore denies Defendants' motion for summary judgment on Plaintiff's excessive force claim.

### b. Failure to Intervene

The Court also finds that triable issues of fact exist with respect to Plaintiff's failure-to-intervene claim against Defendants Torres and Tibbal. "It is widely recognized that all

8

law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also Snead*, 463 F. Supp. 3d at 400 ("Law enforcement officers have an affirmative duty to intervene to prevent fellow officers from infringing on citizens' constitutional rights." (citation omitted)). "Liability may attach only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 Fed. Appx. 18 (2d Cir. 2012). Defendants Torres and Tibbal argue that Plaintiff's failure-to-intervene claim fails on the second element, namely, whether a reasonable observing officer would know excessive force was applied to Plaintiff. *See* Reply Br., at 12. Defendants claim that Plaintiff cannot meet this element because they had no knowledge of Plaintiff's shoulder or arm injury before her arrest and "there was nothing they observed to establish unreasonable force was being used." *Id.* Defendants did not present any undisputed evidence such that no jury could conclude a reasonable observing officer would know excessive force was applied to Plaintiff. *See Anderson*, 477 U.S. at 248 (holding that summary judgment should be denied unless no "reasonable jury could return a verdict for the nonmoving party"). To the contrary, Defendants' argument amounts to factual disputes, which militate against the granting of summary judgment. The Court therefore denies Defendants' motion for summary judgment on Plaintiff's failure-to-intervene claim.

### c. Qualified Immunity

"[E]ven if defendants' actions were unreasonable under current law, qualified immunity protects officers from the sometimes-hazy border between excessive and acceptable force." *Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001) (cleaned up).[4] "If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* (citation omitted). But "[g]iven the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004); *see also Kayo*, ––– F. Supp. 3d at –––, 2021 WL 1226869, at *14. Indeed, the Second Circuit has consistently held that summary judgment is inappropriate if "determination of [a constitutional violation] 'turns on which of two conflicting stories best captures what happened on the street.'" *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 763 (2d Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 216 (2001)); *see also Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded."); *Hemphill v. Schott*, 141 F.3d 412, 416–18 (2d Cir. 1998) (holding that the district court erred by entering summary judgment on qualified immunity when there were disputes remaining about "material factual issues").

---

[4] Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143, 154 (2017) (The parenthetical "(cleaned up)" signifies that the author "has removed extraneous, non-substantive material like brackets, quotation marks, ellipses, footnote reference numbers, and internal citations; may have changed capitalization without using brackets to indicate that change; and affirmatively represents that the alterations were made solely to enhance readability and that the quotation otherwise faithfully reproduces the quoted text."); *see also Brownback v. King*, 141 S. Ct. 740, 748 (2021) (adopting Mr. Metzler's "(cleaned up)" solution).

There are genuine issues of material fact regarding, among other things, the reasonableness of Defendants' use of force and the degree of injury suffered by Plaintiff as a result of Defendants' conduct. Because these "disputes overlap both the excessive force and qualified immunity issues, summary judgment must be denied." *Cowan*, 352 F.3d at 764 (denying summary judgment on a qualified immunity claim after determining in the excessive force analysis that there were genuine issues of material fact regarding the reasonableness of the officers' conduct); *see also Gjenashaj v. City of New York*, No. 19 Civ. 4142, 2020 WL 7342723, at *4 (S.D.N.Y. Dec. 14, 2020) (denying summary judgment on defendants' qualified immunity claim because material facts remain in dispute as to plaintiff's excessive force claim); *Bennett v. Falcone*, No. 05 Civ. 1358, 2009 WL 816830, at *6 (S.D.N.Y. Mar. 25, 2009) ("For the same reasons Plaintiff's excessive force claim survives summary judgment, the Court holds Defendants' qualified immunity claim insufficient.").

## II.     Assault and Battery

Defendants also move for summary judgment on Plaintiff's state law assault and battery claims. "With the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (citing *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir.1991)). Under New York law, to plead an assault claim, Plaintiff must allege "physical conduct placing [her] in imminent apprehension of harmful contact." *Fugazy v. Corbetta*, 825 N.Y.S. 2d 120, 122 (2d Dep't 2006). To plead a battery claim, Plaintiff must allege "bodily contact, made with intent, and offensive in nature." *Id.* As with Plaintiff's excessive force claim, there are genuine issues of material fact that similarly preclude a grant of summary judgment as to Defendants Licata, Hinton, and Tulovic.

11

*See Lloyd v. City of New York*, 246 F. Supp. 3d 704, 729 (S.D.N.Y. 2017) (denying summary judgment on a state assault and battery claim where summary judgment was denied on equivalent Section 1983 excessive force claim); *Graham v. City of New York*, 928 F. Supp. 2d 610, 625 (E.D.N.Y. 2013) ("Since there are questions of fact regarding Plaintiff's excessive force claim, there are also questions of fact regarding Plaintiff's state law assault and battery claims . . . ."). With respect to Defendants Torres and Tibbal, however, the record is devoid of any evidence of "physical conduct" placing Plaintiff in imminent apprehension of harmful contact or "bodily contact, made with intent, and offensive in nature." *Fugazy*, 825 N.Y.S. 2d at 122. The Court therefore grants summary judgment on Plaintiff's assault and battery claims against Defendants Torres and Tibbal and denies summary judgment on her assault and battery claims against Defendants Licata, Hinton, Tulovic, and the City.

### III. Malicious Prosecution

To prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). However, "a State's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018).

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014) (quoting *Manganiello*, 612 F.3d at 161 (citations and internal

quotation marks omitted)). Defendants contend that summary judgment on Plaintiff's federal malicious prosecution claim is appropriate because she has not shown any violation of her Fourth Amendment rights. *See* Def. Br., at 18. Defendants also contend that summary judgment on Plaintiff's state law malicious prosecution claim against Defendant Tulovic is appropriate because she has not demonstrated that Defendant Tulovic "initiat[ed] or continu[ed]" a criminal proceeding against her. *Stampf*, 761 F.3d at 198; *see also* Def. Br., at 19. The Court addresses these two arguments below.

    a. **Deprivation of Liberty**

A plaintiff alleging malicious prosecution under Section 1983 must show "that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). The plaintiff "must therefore show some deprivation of liberty consistent with the concept of 'seizure.'" *Id*. Without such an assertion, there is "no harm of constitutional proportions—*i.e.*, a harm cognizable under § 1983." *Id.* Moreover, this seizure must be effectuated pursuant to "legal process." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). "According to the Court of Appeals, a seizure pursuant to legal process will either be in the form of a warrant and accompanying arrest or 'a subsequent arraignment, in which any post-arraignment deprivations of liberty might satisfy this constitutional requirement.'" *Porat v. Lincoln Towers Community Assoc.*, No. 04 Civ. 3199, 2005 WL 646093, at *2 (S.D.N.Y. Mar. 25, 2005) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995)). The Second Circuit has held that "a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (cleaned up) (quoting *Murphy v. Lynn*, 118

F.3d 938, 947 (2d Cir. 1997) (finding that the post-arraignment requirements that plaintiff appear for court appearances and not leave the state were sufficient to implicate the Fourth Amendment)). In keeping with this guidance, courts in this district have found a deprivation of liberty when arrestees required to make *one* post-arraignment court appearance. *See, e.g.*, *Gogol v. City of New York*, No. 15 Civ. 5703 (ER), 2017 WL 3449352, at *11 (S.D.N.Y. Aug. 10, 2017) (denying defendants' motion for summary judgment on the federal malicious prosecution claim because plaintiff's only post-arraignment appearance constitutes "sufficient liberty deprivation in light of the relevant case law"); *Willis v. City of New York*, No. 12 Civ. 5259 (RA), 2015 WL 556884, at *8 n.9 (S.D.N.Y. Feb. 9, 2015) (finding a liberty deprivation where the arrestee "was required to appear in court twice: at his initial arraignment and at the later hearing date, during which the charge was dismissed").

Here, it is undisputed that Plaintiff was arraigned after her arrest on June 4, 2018, released on her own recognizance, and ordered to appear in court again on July 9, 2018. *See* Pl. 56.1, at ¶ 80; Def. 56.1, at ¶¶ 53–55. Defendants contend, however, that despite the post-arraignment appearance, Plaintiff suffered no deprivation of liberty because the criminal complaint against her was dismissed on July 9, 2018, the same day she was to appear in court.[5] *See* Def. Br., at 19; Reply Br., at 14. Defendants are mistaken in two respects. First, they fail to recognize that the *obligation* to appear in court post-arraignment, apart from her actual

---

[5] In support of this contention, Defendants rely on the Second Circuit's dictum in *Burg v. Gosselin*, 591 F.3d 95 (2d Cir. 2010) that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Id.* at 98. Defendants' reliance is misplaced. First, the Second Circuit clarified in *Swartz* that "*Burg*'s dictum is questionable unless the multiple appearances were for the arrestee's convenience, but, in any event, we decline to apply that dictum to the different context of a plaintiff who was required to appear in court in connection with criminal proceedings initiated by the defendant police officer." 704 F.3d at 112. Second, Defendants' argument fails even if one assumes the continued vitality of *Burg*'s dictum. There were "further restrictions" imposed on Plaintiff in addition to the requirement of a "later court appearance." *Burg*, 591 F.3d at 98. As discussed *infra* in greater detail, Plaintiff's release on her own recognizance incorporates a travel restriction under New York law, which courts have found to constitute a deprivation of liberty under the Fourth Amendment.

14

appearance, is by itself a deprivation of liberty. *See Jocks v.* Tavernier, 316 F.3d 128, 136 (2d Cir. 2003) (concluding that "the *requirements* of attending criminal proceedings and obeying the conditions of bail" constitute a post-arraignment seizure) (emphasis added). They also fail to address the fact that, under New York law, release on one's own recognizance incorporates a restriction on travel and therefore constitutes a deprivation of liberty. Section 510.40 states that "[u]pon ordering that a principal be released on his own recognizance, the court must direct him to appear in the criminal action or proceeding involved whenever his attendance may be required and to render himself at all times amenable to the orders and processes of the court." N.Y. Crim. Proc. Law § 510.40. The Second Circuit has reasoned that, under Section 510.40, an arrestee released on his own recognizance "must ordinarily remain in the state." *Rohman*, 215 F.3d at 216; *see also Perez v. Duran*, 962 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) ("[T]he plaintiff's release on his own recognizance necessarily required the plaintiff to comply with travel restrictions."). Since the imposition of Section 510.40 necessarily imposes a travel restriction, evidence that Plaintiff was released on her own recognizance is enough to demonstrate that she was deprived of her rights under the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 279 (1994) (Souter, J., concurring) ("[A defendant released pretrial] is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges."); *see also Bacote v. Riverbay Corp.*, No. 16 Civ. 1599 (GHW), 2017 WL 11567934, at *17 (S.D.N.Y. Nov. 8, 2017) (finding that "[a] reasonable jury could therefore conclude that a sufficient deprivation of liberty existed, and summary judgment is inappropriate" because, "[l]ike plaintiffs in *Murphy*, *Rohman*, and *Swartz*, Bacote was released on his own recognizance").

### b. Initiation or Continuation of a Criminal Proceeding

To establish a malicious prosecution claim against Defendant Tulovic under New York law, Plaintiff must show that Defendant Tulovic initiated or continued a criminal proceeding against her. *Stampf*, 761 F.3d at 198. "Where a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution." *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999) (citing *Babi–Ali v. City of New York*, 979 F. Supp. 268, 276 (S.D.N.Y. 1997).

The evidence adduced in discovery would permit a jury to conclude that both Defendants Tulovic and Licata initiated criminal proceedings against Plaintiff. Although Defendant Tulovic did not sign the criminal complaint against Plaintiff, she provided information about the case to the New York County District Attorney's Office by filing out the Complaint Report and Domestic Incident Report. *See* Pl. 56.1, at ¶ 52. Plaintiff claims that the information provided by Defendant Tulovic was false or manufactured, based on which she was falsely charged with unlawful eviction and maliciously prosecuted. *See* Am. Compl., at ¶ 32. It therefore cannot be said that Defendant Tulovic did not involve in the decision to prosecute Plaintiff. *Cf. Costello v. Milano*, 20 F. Supp. 3d 406, 419 (S.D.N.Y. 2014) (concluding that there is no evidence that the defendant "initiated [p]laintiff's prosecution for any of the crimes with which [p]laintiff was charged by, *e.g.*, signing a charging instrument, discussing [p]laintiff's prosecution with the DA's Office or involving himself in [p]laintiff's prosecution in any other way").

The Court denies the motion for summary judgment on Plaintiff's federal and state law malicious prosecution claims against Defendants Licata and Tulovic and grants the

motion as to Defendants Torres, Hinton, and Tibbal as conceded. *See* Opp'n. Br., at 15 ("Plaintiff concedes that her federal and state law malicious prosecution claims against Defendants Torres, Hinton, and Tibbal should be dismissed . . . .").[6]

### IV. Motion for Leave to Amend

Plaintiff seeks to amend her complaint to add Detective Carlos Matos as a co-defendant. *See* ECF No. 44. A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Notwithstanding the liberality of the general rule, "it is within the sound discretion of the court whether to grant leave to amend," *John Hancock Mutual Life Insurance Co. v. Amerford International Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citation omitted), and for the proper reasons, a court may deny permission to amend in whole or in part. *H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y. 1986) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–32 (1971)). "A party must show good cause to amend his or her complaint if the motion is filed after the deadline imposed by the district court in its scheduling order." *John Hancock*, 22 F.3d at 462.

"Whether good causes exist turns on the 'diligence of the moving party.'" *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). "[T]he movant must show that the deadlines [could not] be reasonably met despite its diligence." *Williams v. Town of Hempstead*, No. 16 Civ. 1992 (ADS), 2017 WL 4712219, at *4 (E.D.N.Y. Oct. 18, 2017). Good cause does not exist "when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (citations and internal quotation marks omitted). In

---

[6] The Court need not address Defendants Torres, Hinton, and Tibbal's assertion of qualified immunity with respect to the conceded federal and state law malicious prosecution claims against them. *See* Def. Br., at 20.

addition to considering whether the moving party has shown good cause, "[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

The Court ordered Plaintiff to eliminate all unknown defendants by October 11, 2019, *see* ECF No. 12, and amend her complaint by January 15, 2020, *see* ECF No. 18. Plaintiff's motion violates both of these orders and comes after the close of fact discovery on December 16, 2020, *see* ECF No. 40, and after the filing of Defendants' motion for summary judgment on January 8, 2021, *see* ECF No. 41. Plaintiff also admits that she learned of the identity of Detective Matos on September 22, 2020, and deposed him on October 19, 2020. In her motion, Plaintiff made no explanation of the near four-month gap between her knowledge of Detective Matos and her motion to add Detective Matos as a co-defendant. In the absence of any showing of good cause, the Court denies Plaintiff's motion for leave to amend. *See CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 167 (S.D.N.Y. 1990) ("When the motion is made after discovery has been completed and a motion for summary judgment has been filed, leave to amend is particularly disfavored because of the resultant prejudice to defendant." (citing *Ansam Assoc. Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for summary judgment and denies Plaintiff's motion for leave to amend. Specifically, the Court grants Defendants' motion for summary judgment as to the following claims:

- Plaintiff's federal and state law false arrest claim against Defendants Hinton, Torres, and Tibbal;

- Plaintiff's federal and state law malicious prosecution claim against Defendants Hinton, Torres, and Tibbal;

- Plaintiff's assault and battery claims against Defendants Torres and Tibbal; and

- Plaintiff's negligent hiring, retention, training, and supervision claim against the City.

The Court denies Defendants' motion for summary judgment as to all other claims. By August 27, 2021, Plaintiff shall amend her complaint to conform to these rulings and drop any claims and parties as appropriate. No answer is required. Admissions and denials in the existing answer shall apply to the amended complaint. The parties shall appear for a status conference on September 17, 2021, at 10:00 a.m., to chart further progress in this case. The Clerk shall terminate the open motions (ECF Nos. 41, 44).

       SO ORDERED.

Dated:    July 28, 2021                         _____/s/_____
          New York, New York                ALVIN K. HELLERSTEIN
                                                         United States District Judge